OXFORD TELEPHONE MANUFACTURING COMPANY *v.* ARK-
ANSAS NATIONAL BANK.

Opinion delivered May 27, 1918.

APPEALS—TIME FOR TAKING—CHANCERY PROCEEDING—EFFECT OF MO-
TION TO VACATE DECREE.—The time for taking an appeal to the
Supreme Court is six months after the rendition of the judgment,
order or decree sought to be reviewed; and in a proceeding in
chancery, this time is not extended by reason of the filing of a
motion to vacate the decree.

Appeal from Washington Chancery Court; *Ben F.
McMahan,* Chancellor; affirmed.

*E. B. Wall,* for appellant.

*R. J. Wilson* and *H. L. Pearson,* for appellee.

SMITH, J.   The Oxford Telephone Manufacturing
Company, hereinafter referred to as the company, was
an Arkansas corporation, but in 1913 it concluded to es-
tablish a branch of its business at Houston, Texas, and
secured the necessary permit to do business in that
State for the balance of the year covered by the permit
and ending May 1, 1914.   This permit was not renewed,
and it became the duty of the proper officer of that State
to cancel the permit, and on July 25, 1914, a Texas stock-
holder filed an application for a receiver at Houston, al-
leging, among other things, that the company had failed
to renew its permit to do business in the State of Texas
for the then current year.   A receiver was appointed,
who took charge of all property belonging to the company
in the State of Texas.   An agreement was made on
August 10, 1914, between the company and one Dr. C. S.
Preston and H. A. Kinney, both Texas stockholders and
directors in the company, to take the real estate of the
company in Texas and pay the indebtedness due in that
State, and to pay all costs in the receivership proceed-
ings, and to return to the company, free and clear from
all liens and indebtedness, all the personal property of
the company in the State of Texas.   Authority for this
agreement was conferred in a resolution passed by the

board of directors of the company. Preston was present at the meeting at which this resolution was passed. Necessary deeds to effectuate the resolution were prepared and placed in escrow.

On December 17, 1914, the Arkansas National Bank, hereinafter referred to as the bank, filed a complaint in the Washington chancery court asking reformation and foreclosure of a chattel mortgage given it by the company to secure a certain promissory note executed by the company to its order together with a personal judgment against certain of the company's officers. This complaint contained a prayer also for the appointment of a receiver to take charge of the assets of the company, the allegation being made that it was insolvent. The Texas contract was not consummated because of a disagreement which arose over certain of its provisions.

Judgment was rendered in favor of the bank on February 23, 1915, for $4,477.76 against the company. No order was made, however, by the chancery court appointing a receiver, but it appears that by common consent one J. F. Moore acted as such, or in that capacity, and executed a number of orders made by the court in regard to the property of the company, and as a result of this action and of these orders the property of the company appears to have been disposed of on advantageous terms, and the largest possible amount realized out of its assets.

Pending that proceeding in the Washington chancery court, leave was obtained from that court by the company on July 28, 1916, to sue the bank for participation in an alleged wrongful conversion and disposition of certain of its assets, and in its complaint filed in that behalf the company alleged that Preston had wrongfully converted its Texas property, in which action the bank had connived, and that included in the property thus converted was a lot of telephone wire which was very valuable. That this wire was shipped to Fayetteville and consigned to the bank, and that action was taken in violation of the contract between the company and

Preston and in contempt of the decree of the Texas court disposing of that property. That Preston sold and retained the proceeds of the sale of certain personal property, and that the wire was taken charge of by an officer of the bank, which caused the same to be levied upon in satisfaction of the debt due it from the company. There was a prayer for the value of the property alleged to have been thus wrongfully converted by the bank and Preston.

Among other orders made by the court pending the final disposition of the original suit was one in which it was recited that ''by agreement of counsel it is ordered by the court that the officers and directors of the company be and they are hereby authorized and permitted to sell any and all personal property of said company by private sale and apply the proceeds thereof to the payment of the judgment as herein set forth.'' The court also ordered that all the personal property in Texas be shipped to Fayetteville except certain machinery. This order was not complied with, and the court made another order that Moore cause the wire and electric appliances and all telephone equipment to be shipped to Fayetteville and to make such disposition of the machinery in Texas as to him should seem fit.

One of the orders made by the court directed the attorney for the bank to assist Moore in collecting and disposing of the assets of the company, and this suit was brought upon the theory that the attorney for the bank entered into a fraudulent arrangement with Preston for the disposition of the assets in Texas. The record is a voluminous one, and contains much testimony in regard to the assets thus collected and the disposition made of them, and no useful purpose would be served in setting out this testimony. The attorney for the bank testified that he had no understanding or agreement with Preston except to discuss with him the terms of the orders of the Washington Chancery Court and that there was no significance in billing the wire to the bank and that this was done to insure the payment of the freight, and that

while the wire had been levied upon in satisfaction of the bank's judgment, that levy was canceled by order of the court and the wire disposed of under the orders and direction of the court, and that the proceeds of the sale of the wire and all the other property were disbursed pursuant to the orders of the court. The court so found and dismissed the complaint against the bank for want of equity, and that finding does not appear to be contrary to the preponderance of the testimony.

An appeal was duly prosecuted from this decree, but subsequent thereto certain proceedings were had in the chancery court for the purpose of fixing the compensation of Moore as receiver, and a transcript of the testimony taken in that behalf has been filed with the clerk of this court. From this transcript it appears that Moore filed with the clerk of the court below a report showing the assets of the company which he had collected and the distribution thereof which he had made and the balance remaining in his hands. The bank filed exceptions to Moore's report, questioning the allowance of a number of credits there claimed, consisting principally of personal expenses of Moore and his attorney, and certain of these exceptions were sustained by the court, and to so much of the order and judgment of the court as sustained these exceptions the company has excepted, and has attempted to prosecute an appeal to reverse the action of the court in the respects stated. This judgment of the court appears to have been rendered on August 31, 1917, and it is apparent that the appeal was not perfected by the filing of a transcript within six months. The transcript was lodged with the clerk of this court on the 22d day of April, 1918, which is more than six months after the judgment appealed from, and this second appeal will, therefore, be dismissed as not having been prosecuted in apt time.

HUMPHREYS, J., did not participate.

SMITH, J., (on rehearing). A motion for rehearing has been filed, in which appellant calls attention to

the fact that, although the decree which he seeks to have reversed was rendered on August 31, 1917, there was pending a motion to vacate this decree, which was not disposed of until November 5, 1917, and this second appeal was prosecuted within six months of the last named date. The following orders of the court appear in the transcript after the entry of the order of August 31, 1917, sustaining exceptions to the receiver's settlement:

November 2, 1917: "Motion of Oxford Telephone Manufacturing Company filed in vacation on September 11, 1917, to vacate order and judgment of this court as herein rendered on the tenth day of the present term of this court and for permission to take further proof, now noted as filed in this cause."

And on the same date the following order: "Deposition of T. H. Humphreys, a witness on behalf of the defendant in above entitled matter, filed in vacation on October 8, 1917, now noted as filed in this cause." The deposition mentioned was taken on the 28th day of September, 1917.

And on the same date: "Report of J. F. Moore, for the Oxford Telephone Manufacturing Company, filed."

Under date of November 3, three orders appear in regard to this cause. The first of these is the notation of the motion of the bank to suppress the deposition of T. H. Humphreys. The second is the exceptions of the bank to the report of J. F. Moore filed on the sixteenth day of the term. And the third order is the response of the bank to the motion of the telephone company to vacate the order and judgment, made on the tenth day of the term.

Under date of November 5, three other orders were made. The first of these notes the overruling of the motion of the bank to suppress the deposition of T. H. Humphreys and the exception of the bank to that action. The second order overrules the motion of the telephone company to vacate the judgment of the court made on the tenth day of the term of the court and the exceptions of the telephone company to that order. The third order

made on November 5 sustains certain exceptions of the
bank to the report of Moore which was filed on the six-
teenth day of the term of the court and the exceptions
of the telephone company and Moore to that order.

It is thus apparent that no statutory ground for
vacating the decree is assigned. Appellant stands upon
the proposition that the order of the court overruling
his motion to vacate the judgment forms a new point
from which the six months' statute on appeals is to be
computed. It will be borne in mind that the motion to
vacate the judgment and for permission to take further
testimony was filed in vacation, and the only action which
the court appears ever to have taken in regard thereto
was to overrule the motion when it was presented.

We held in the case of *Chatfield* v. *Jarratt,* 108 Ark.
523, that the time within which an appeal must be prose-
cuted begins to run from the date of the rendition of the
judgment or decree, and not from the date of the entry
of the judgment. And in the case of *Moore* v. *Hender-
son,* 74 Ark. 181, it was held that an appeal must be pros-
ecuted within one year (the time then allowed for appeals
after the rendition of the judgment sought to be reviewed,
and not within one year after the overruling of the motion
for a new trial, where such motion serves no other pur-
pose than a means for a review of the proceedings cul-
minating in the judgment.

It is true that was a case at law where a motion for
a new trial was necessary to bring the exceptions saved
at the trial into the record, while the instant case is a
chancery case where a motion for a new trial was not
necessary, the testimony in the case having been taken
by depositions. But that difference is not controlling.
The decision in the case of *Moore* v. *Henderson, supra,*
was based upon the language of the statute, and that stat-
ute applies alike to appeals in both law and chancery
cases. The relevant portion of the existing statute on
this subject is identical with the statute quoted in that
case, the only difference between the two statutes, so far
as the point under consideration is concerned, is that the

present statute limits the right of appeal to six months, whereas the former statute allowed one year for that purpose. The language of this statute is: "An appeal or writ of error in a civil case shall not be granted except within six months next after the rendition of the judgment, order or decree sought to be reviewed. * * *"

Such appears to be the general practice aside from statutory provisions. In 3 C. J., p. 1054, sec. 1051, it is said: "In some jurisdictions the pendency of a motion to vacate and set aside or modify a judgment is held to suspend the operation of the judgment, so that it does not take final effect for the purpose of an appeal or writ of error until the motion has been disposed of. The general rule, however, is that the pendency of a motion to vacate or modify a judgment or order does not relieve one from the statutory requirement to appeal within the prescribed time. And when the statutory period has elapsed without an appeal or proceeding in error having been taken, the right to appeal or bring error can not be restored by a motion to vacate the judgment or order and an appeal or proceeding in error from the refusal of such motion."

The motion for rehearing is, therefore, overruled.